United States District Court
Southern District of Texas

**ENTERED**

January 28, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| WILLIAM VARDEMAN, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-3242 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

William Vardeman alleges that a City of Houston employee working at Houston's Hobby Airport assaulted him when he stopped his vehicle to pick up his family and load their luggage. Vardeman sued the City of Houston and its employee, Rickey Dewayne Simpson, in state court, alleging Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 and state-law claims of negligence and assault and battery. (Docket Entry No. 1-6). The City removed based on federal question jurisdiction, Vardeman filed an amended complaint, and the City and Simpson moved to dismiss. (Docket Entry Nos. 1, 12, 14, 15). The court granted the City's motion to dismiss, (Docket Entry No. 18), leaving a Fourth Amendment claim against Simpson.[1]

---

[1]  The court also permitted Vardeman's state-law assault claim against Simpson to proceed. But in Simpson's recent motion for judgment on the pleadings, (Docket Entry No. 33-1), he argued that Vardeman's claim was barred by the Texas Tort Claims Act. Section 101.106 of the Texas Tort Claims Act, provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). In Vardeman's original petition, he named both the City and Simpson as defendants and asserted tort theories against both. (Docket Entry No. 1-1). In state court, the City moved to dismiss Simpson under § 101.106(e). (Docket Entry No. 1-3). Vardeman then voluntarily non-suited Simpson but added back in the state-law tort claim against Simpson when he amended to add a § 1983 claim. (Docket Entry No. 1-6). The Texas Tort Claims Act does not per se bar claims against public employees for their own tortious conduct, but it does require "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017) (citation omitted). "If the plaintiff nevertheless sues both employer and employee,

Simpson has filed a motion for judgment on the pleadings, arguing that because Vardeman's amended complaint does not allege that Simpson was trying to stop or restrain him, no "seizure" occurred.  (Docket Entry No. 33-1).  Vardeman has responded, Simpson has replied, and Vardeman has surreplied.  (Docket Entry Nos. 44, 45, 46-1).

Based on the motion, response, replies, and the applicable law, the court grants Simpson's motion for judgment on the pleadings.  Final judgment is entered separately.  The reasons are explained below.

## I.     The Pleadings

Vardeman alleges that in September 2018, he went to the Hobby Airport in Houston to pick up his wife, daughter, and granddaughter.  (*Id.* at ¶¶ 6–8).  Vardeman stopped his vehicle in the passenger pick up lane.  (*Id.* at ¶ 9).  He did not immediately comply with a traffic officer's requests to move his vehicle forward because he was trying to call his wife.  (*Id.*)  As Vardeman started to move his vehicle forward, his wife called him and told him that the family was standing outside the baggage claim doors.  (*Id.* at ¶ 10).  Vardeman stopped his vehicle and opened his tailgate to prepare to load his family's luggage into the car.  (*Id.* at ¶ 11).   A Houston Airport security attendant approached him and told him to move his vehicle.  (*Id.* at ¶¶ 11–12).  Vardeman got back into his vehicle, but when he saw his family, he jumped back out and started to load the luggage.  (*Id.* at ¶13).  The security attendant approached Vardeman again and said, "I told you to move your f***ing car."  (*Id.*).  Vardeman explained that his family was right there and that he

_____

section 101.106(e) requires that the employee 'immediately be dismissed' on the employer's motion."  *Id.* The "statutory right to dismissal accrues when the motion is filed and is not impaired by later amendments to the pleadings or motion."  *Id.*  After reconsidering the statutory language, recent cases, and Rule 11 of the Federal Rules of Civil Procedure, Vardeman has asserted that he will not pursue his state-law tort claim again Simpson.  (Docket Entry No. 44 at 1).  The motion for judgment on the pleadings as to the state-law tort claim against Simpson is granted.

would move as soon as the bags were loaded.  (*Id.*).  The security attendant called for backup.  (*Id.* at ¶14).

As Vardeman finished loading his family's bags into his vehicle, he was approached by another airport employee, Rickey Dewayne Simpson.  (*Id.* at ¶ 15).  Vardeman alleges that Simpson yelled into his face, "[y]ou need to move the f***ing car or I will whip your b**** a**." (*Id.*).  Vardeman's daughter, who was holding her baby, tried to separate the two men, but Simpson "forcefully pushed" her.  (*Id.* at ¶ 16).  Vardeman then pushed Simpson away, and Simpson allegedly hit Vardeman with a closed fist.  (*Id.* at ¶ 17).  Vardeman was knocked to the ground. He alleges that Simpson was "menacing" him, standing over him as if to strike him again.  (*Id.* at ¶¶ 17–18).  Vardeman's wife stepped in front of Simpson, who then walked away.  (*Id.* at ¶ 18). Vardeman called the City of Houston Police Department and returned to his vehicle.  (*Id.* at ¶¶ 19– 20).

Simpson neither admits or denies, or mostly denies, Vardeman's allegations, and moves for a judgment on the pleadings to dismiss Vardeman's remaining claim.  (Docket Entry Nos. 33-1, 33-2).

## II.     The Rule 12(c) Standard

"A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted). The Rule 12(c) standard is the same as that under Rule 12(b)(6).  *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Under *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Off.*, 530 F.3d 368, 372 (5th Cir. 2008).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.  Analysis

Simpson argues that Vardeman's pleadings do not allege that Simpson had an objective intent to restrain Vardeman, which is required for an excessive-force Fourth Amendment claim. Instead, Simpson argues, Vardeman's pleadings show that Simpson used force because he wanted Vardeman to move, not stop.  Vardeman responds that when Simpson punched him so hard that he fell to the ground, Simpson manifested an objective intent to prevent Vardeman from leaving.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. A § 1983 excessive force claim under the Fourth Amendment requires that a plaintiff show (1) that he was seized, (2) that he suffered an injury, (3) which resulted directly and only from the use of force that was excessive to the need, and that (4) the force used was objectively unreasonable. *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)); *see also Graham v. Connor*, 490 U.S. 386, 388 (1989) (the Fourth Amendment governs "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person").

A seizure occurs when a government employee "by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  In *Torres v. Madrid*, 141 S. Ct. 989 (2021), the Supreme Court explained seizure by force under the Fourth Amendment requires the government employee to have used force with the "intent to restrain" or "apprehend":

> [A]pplication of the common law rule does not transform every physical contact between a government employee and a member of the public into a Fourth Amendment seizure.  A seizure requires the use of force *with intent to restrain*.  Accidental force will not qualify. *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).  Nor will force intentionally applied for some other purpose satisfy this rule.  In this opinion, we consider only force used to apprehend.
>
> . . .
>
> [T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context. . . .  While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain.  A tap on the shoulder to get one's attention will rarely exhibit such an intent.
>
> . . .
>
> Nor does the seizure depend on the subjective perceptions of the seized person.

*Id.* at 998–99 (emphasis in original).[2]

Since *Torres*, several courts have addressed when physical force applied by a government officer is a "seizure," based on whether the employee had manifested an objective "intent to restrain" or "apprehend."  In *Jones v. District of Columbia*, C.A. No. 21-836 (RC), 2021 WL 5206207 (D.D.C. Nov. 9, 2021), police officers approached Jones in a public place and allegedly

---

[2]  At least one court has held that *Torres* is limited to seizures by force, not seizures by control.  *See Nocella v. Gardner*, No. 2:21-cv-00476-TC-DAO, 2021 WL 5565652, at \*3 (D. Utah Nov. 29, 2021).  Because Vardeman claims a seizure by force, *Torres* is applicable.

began to "harass, taunt, push, and spit at him, all unprovoked." *Id.* at *1. On a motion to dismiss, the court held that despite allegations that the officers pushed Jones, "blocked him from proceeding along his preferred path," and "sent Jones 'backwards,'" Jones did not allege facts supporting an inference that the officers seized Jones because "an intent to keep out or to redirect is not an intent to 'restrain' or 'apprehend.'" *Id.* at *4 (citing *Torres*, 141 S. Ct. at 998).

In *Molina v. St. Louis*, No. 4:17-CV-2498-AGF, 2021 WL 1222432 (E.D. Mo. Mar. 31, 2021), the plaintiffs attended a protest in St. Louis. *Id.* at *1. They asserted a Fourth Amendment excessive force claim against several officers who used chemicals on the plaintiffs "well after and away from the protest scene." *Id.* at *10. On a motion for summary judgment, the court held that one of the protestors who was hit by a flying canister and bruised on the hip had not alleged, nor did the record reflect, that the officers "intend[ed] to terminate [the plaintiff's] freedom of movement." *Id.* at *11; *cf. McWilliams v. DiNapoli*, No. CIV-19-212-SPS, 2021 WL 3710728, at *3, 6 (E.D. Okla. Aug. 20, 2021), *appeal filed*, No. 21-7045 (10th Cir. Aug. 31, 2021) (on a motion for summary judgment, the court held that no objective intent to restrain was evidenced when a deputy sheriff grabbed a cigarette from the plaintiff and hit the plaintiff's nose with the deputy's hat, but that a seizure did occur when the deputy began punching the plaintiff and took hold of the plaintiff to take him to the ground).

In this case, an airport employee allegedly lost his temper and punched a driver who was not moving fast enough to drive his vehicle out of the passenger pick up lane. But the court agrees with Simpson that the alleged facts do not support a reasonable inference that Simpson objectively manifested an intent to restrain Vardeman. Simpson arrived on the scene after a traffic officer and an airport security attendant had told Vardeman to move his vehicle multiple times. (Docket Entry No. 12 at ¶¶ 8–14). Simpson repeated the same warning. When Vardeman's daughter stuck her

6

arm between the two men, Simpson allegedly pushed Vardeman's daughter; Vardeman pushed Simpson; and Simpson punched Vardeman, knocking him to the ground.  Simpson stood over Vardeman, "menacing" him, then walked away.  (*Id.* at ¶¶ 15–18).  Although Simpson used enough force in the punch to knock Vardeman to the ground, which is "pertinent" to "assessing the objective intent to restrain," *Torres*, 141 S. Ct. at 989, the facts alleged are that Simpson wanted Vardeman to move along, not to remain, and that Simpson left before Vardeman stood back up. The alleged facts support an inference that Simpson intentionally applied force, but they do not support a reasonable inference that Simpson intended to stop Vardeman from leaving. [3]

Simpson did not "seize" Vardeman, meaning that Vardeman has not stated a Fourth Amendment excessive force claim.

## IV.  Conclusion

Simpson's motion for judgment on the pleadings, (Docket Entry No. 33-1), is granted. Vardeman's first motion in limine is moot.  (Docket Entry No. 29).  Final judgment is entered separately.

SIGNED on January 28, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

---

[3]  In his reply, Simpson presents an additional argument that Vardeman's excessive force claim should fail because Simpson was a non-law-enforcement municipal employee.  Simpson relies on *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990), which held that non-law-enforcement governmental conduct can be considered a search or seizure under the Fourth Amendment only when the conduct is intended to "elicit a benefit for the government in either its investigative or administrative capacities."  *Id.* at 1431–33.  As Vardeman points out, the Supreme Court has implicitly rejected this interpretation of the Fourth Amendment.  *See Soldal v. Cook Cty.*, 506 U.S. 56, 69 (1992).